UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN RINES, On Behalf of Himself and All Others Similarly Situated, | § § § | Civil Action No. 3:07-cv-01468-K **(Consolidated)** |
| | § | |
| Plaintiff, | § | <u>CLASS ACTION</u> |
| | § | |
| vs. | § | |
| | § | |
| HEELYS, INC., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
<u>**AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**</u>

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................... 1

II.  THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR FINAL
APPROVAL UNDER RULE 23(e) .................................................................. 4

    A.  The Law Favors and Encourages Settlements ...................................... 4

    B.  The Fifth Circuit's Standards Governing Class Action Settlements ..................... 6

        1.  The Range of Possible Recovery .......................................................... 8

        2.  The Probability of Plaintiffs' Success on the Merits ............................ 10

            a.  Risks to Establishing Defendants' Liability ...................................... 10

            b.  Risks to Establishing the Class' Damages ......................................... 12

        3.  The Proposed Settlement is Free from Fraud and Collusion ................................. 13

        4.  The Complexity, Expense, and Likely Duration of Continued Litigation Favor
Approval of the Settlement ................................................................ 14

        5.  The Stage of the Proceedings and the Amount of Discovery Completed............. 16

        6.  The Opinions of Class Counsel, Lead Plaintiffs and the Class............................ 17

III.  CERTIFICATION OF THE CLASS IS PROPER ......................................... 21

    C.  Predominance of Common Issues and Superiority............................... 24

IV.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE........... 25

V.  CONCLUSION........................................................................................... 28

i

## TABLE OF AUTHORITIES

CASES

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 861 (N.D. Tex. 2005) ...................................................................8

*Amchem Products v. Windsor*,
   521 U.S. 591 (1997)...............................................................................................19, 20

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)................................................................................9

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................................6, 13

*Barrie v. Intervoice-Brite, Inc.*,
   Civil Action No. 3:01-CV-1071-K,
   2006 U.S. Dist. LEXIS 69299 (N.D. Tex. Sept. 25, 2006)....................................20

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978)................................................................................22

*In re Broadcom Corp. Sec. Litig.*,
   Case No. SACV 01-275 DT (MLGx),
   2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12, 2005)  ...................................24

*Carson v. American Brands, Inc.*,
   450 U.S. 79 (1981)................................................................................................5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..................................................................................12

*In re Chicken Antitrust Litig.*,
   669 F.2d 228 (5th Cir. 1982) ................................................................................7, 22

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978) ...........................................................................14

*In re Corrugated Container Antitrust Litig.*,
   643 F. 2d 195 (5th Cir. 1981) ...............................................................................13, 15

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977)...............................................................................5, 6

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................16

*In re Elec. Data Sys. Corp. Sec. Litig.*,
    226 F.R.D. 559 (E.D. Tex. 2005) ..............................................................................20

*In re Enron Sec. and ERISA Litigs.*,
    Civ. No. H-01-3624,
    2003 WL 22494413 (S.D. Tex. July 24, 2003) ..........................................................19

*In re Enron Sec., Derivative and ERISA Litig.*,
    228 F.R.D. 541 (S.D. Tex. 2005) ................................................................................7

*Faircloth v. Certified Fin. Inc.*,
    No. 99-3097 SECTION "T" (3),
    2001 U.S. Dist. LEXIS 6793 (E.D. La. May 15, 2001) ..............................................12

*In re Firstplus Fin. Group, Inc. Sec. Litig.*,
    No. 3:98-CV-2551-M,
    2002 U.S. Dist. LEXIS 20446 (N.D. Tex. Oct. 23, 2002) ..........................................20

*Florida Trailer & Equipment Co. v. Deal*,
    284 F.2d 567 (5th Cir. 1960) ......................................................................................6

*Gibb v. Delta Drilling Co.*,
    104 F.R.D. 59 (N.D. Tex. 1984) ................................................................................22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................7

*See In re Heritage Bond Litig.*,
    MDL Case No. 02-ML-1475DT,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ..........................................15

*Krin v. BancTexas Group, Inc.*,
    989 F. 2d 1435 (5th Cir. 1993) ..................................................................................11

*Lelsz v. Kavanagh*,
    783 F. Supp. 286 (N.D. Tex. 1991) ............................................................................17

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................................7

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ....................................................................................17

iii

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
  Nos. 94-5522 (RBK) & 96-2318 (RBK),
  2005 U.S. Dist. LEXIS 32164 (D.N.J. June 30, 2005) ............................................................11

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK),
  2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007).....................................................7, 24

*In re Michael Milken & Assoc. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ...............................................................................................9

*Miller v. Republic Nat'l Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) ....................................................................................................5

*Newby v. Enron Corp.*,
  Civil Action No. H-01-3624,
  2008 U.S. Dist. LEXIS (S.D. Tex. Sept. 8, 2008).   ................................................................4

*In re OCA, Inc. Sec. and Derivative Litig.*,
  Civil Action No: 05-2165 Section R(3),
  2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17, 2008) ...................................................18, 21

*In re OCA, Inc. Sec. and Derivative Litig.*,
  Civil Action No: 05-2165 Section R(3),
  2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009).....................................................12, 15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................................................................7

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..............................................................................................5

*Pettway v. American Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) ...................................................................................................5

*Purdie v. Ace Cash Express, Inc.*,
  No. 3:01-CV-1754-L,
  2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) .........................................................5

*In re Reliant Sec. Litig.*,
  Master File No. H-02-1810,
  2005 U.S. Dist. LEXIS 9716 (S.D. Tex. Feb. 18, 2005) ....................................................19, 21

*Quintanilla v. A&R Demolition Inc.*,
  Civil Action No. H-04-1965,
  2007 WL 5166849 (S.D. Tex. May 7, 2007) ...........................................................................17

iv

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ............................................................................................5, 6

*Ryan v. Flowserve*,
   245 F.R.D. 560 (N.D. Tex. 2007), *rev'd in part, vacated in part*,
   *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009) .................9, 11

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ........................................................................................13

*Santos v. Camacho*,
   Civil Case No. 04-00006,
   2007 U.S. Dist. LEXIS 1668 (D. Guam Jan. 9, 2007) ...........................................................19

*Schwartz v. TXU Corp.*,
   Cause No. 3:02-CV-2243-K,
   2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ..................................................16, 22

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ...........................................................................................................21

*Streber v. Hunter*,
   221 F.3d 701, *reh'g denied en banc*, 233 F.3d 576 (5th Cir. 2000) .......................................12

*Strougo ex rel. Brazilian Equity Fund v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................................13

*Taft v. Ackermans*,
   No. 02 Civ. 7951 (PKL),
   2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ........................................................23

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP),
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................................................14

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ..............................................................................13, 16

*United States v. Texas Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ...............................................................................................5

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) .............................................................................................................4

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) .............................................................................................20

**STATUTES**

15 U.S.C. § 77k(b)(3) ............................................................................................10

15 U.S.C. § 77k(e) .................................................................................................8

15 U.S.C. §78u-4(a)(3)(B)(i) ...............................................................................21

15 U.S.C. § 78u-4(a)(7) ........................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Alaska Electrical Pension Fund, Jeff Aivazian, Wayne Williamson and David Gamel (collectively, the "Lead Plaintiffs"), by and through their counsel Barroway Topaz Kessler Meltzer & Check, LLP and Coughlin Stoia Geller Rudman & Robbins LLP ("Lead Plaintiffs' Counsel"), respectfully move this Court for an order granting: (i) final approval of the proposed settlement ("Settlement") of the above-captioned action (the "Action") as embodied in the Stipulation of Settlement dated July 20, 2009 (the "Stipulation");[1] (ii) certification of the class for settlement purposes (the "Class");[2] and (iii) final approval of the proposed plan for allocating the settlement proceeds to members of the Class (the "Plan of Allocation"), all of which this Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated July 31, 2009 (the "Order for Notice and Hearing").

## I.    PRELIMINARY STATEMENT

The proposed Settlement of this Action provides for the payment of seven million, five hundred thousand dollars ($7,500,000) in cash (the "Settlement Amount"), which amount has been fully funded and is currently earning interest for the Class, in exchange for the dismissal of

---

[1] All capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation.

[2] The Class is defined as: all persons and entities who purchased shares of Heelys, Inc. ("Heelys" or the "Company") common stock pursuant to, or traceable to, the Company's registration statement and prospectus filed in connection with its December 2006 Initial Public Offering ("IPO"). Excluded from the Class are: Defendants, members of the families of each of the Individual Defendants; any parent, subsidiary, affiliate, partner, officer, executive or director of any Defendant; any entity in which any such excluded Person has a controlling interest; and the legal representatives, heirs, successors, and assigns of any such excluded party. Also excluded from the Class are any putative Class Members who timely and validly exclude themselves from the Class in accordance with the requirements set forth in the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice").

all claims brought against the Defendants.[3]  The Settlement Amount plus interest accrued thereon (the "Settlement Fund") will be used for the payment of taxes, notice and administrative costs and for attorneys' fees and expenses awarded by the Court.  The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who submit valid Proof of Claim and Release forms ("Proofs of Claim") to Gilardi & Co. LLC ("Gilardi"), the claims administrator for the Settlement, and whose claims for recovery have been allowed pursuant to the terms of the Stipulation ("Authorized Claimants").  *See infra* § V.

    As set forth in detail in the accompanying Joint Declaration of Andrew L. Zivitz and Dennis J. Herman in Support of Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds and Application for an Award of Attorneys' Fees and Expenses (the "Joint Declaration"), the proposed Settlement is the product of over one and one-half years of investigation, litigation and settlement negotiations.  Since this Action was commenced in August 2007, Lead Plaintiffs and their counsel have diligently and vigorously pursued their claims against the Defendants and were prepared to continue litigating the Action had the Settlement not been reached.  To that end, Lead Plaintiffs' Counsel, *inter alia*: (i) reviewed and analyzed voluminous public documents, including the Company's filings with the United States Securities and Exchange Commission ("SEC"), conference calls and announcements made by Defendants, wire and press releases published by and regarding Heelys and securities analysts' reports; (ii) contacted and/or interviewed dozens of former Heelys employees and industry

---

[3] Defendants in this Action are: (i) Heelys, Michael G. Staffaroni, Patrick F. Hamner, Michael W. Hessong, Roger R. Adams, Richard E. Middlekauff, Samuel B. Ligon, William R. Thomas, James T. Kindley, Capital Southwest Corp. and Capital Southwest Venture Corp. (collectively, the "Heelys Defendants") and (ii) Bear, Stearns & Co., Inc., Wachovia Capital Markets, LLC, J.P. Morgan Securities Inc. and CIBC World Markets Corp. (collectively, the "Underwriter Defendants" and, together with the Heelys Defendants, the "Defendants").

sources; (iii) consulted with a damages and materiality expert; (iv) thoroughly researched the law pertaining to the claims and defenses asserted; (v) successfully opposed motions to dismiss filed by multiple defendants; and (vi) engaged in formal discovery, including the review and analysis of over 850,000 pages of documents produced by Defendants and certain non-parties. Following these efforts, the Settlement was achieved only after hard-fought adversarial negotiations, including two full-days of formal mediation with the assistance of the Honorable Nicholas H. Politan (Ret.), a retired federal judge and a mediator highly experienced with complex securities fraud actions.[4]

The proposed Settlement, as detailed herein, provides the Class with a substantial recovery -- representing approximately 9% of Lead Plaintiffs' expert's estimate of the Class' maximum viable damages (and a much greater percentage of Defendants' estimate of damages). In addition to recovering a significant portion of the Class' damages, the Settlement at this time also avoids the hurdles Lead Plaintiffs would have to clear with respect to overcoming Defendants' defenses to falsity and loss causation, and avoids the significant costs associated with further litigation of this complex securities action, particularly the completion of discovery. The Settlement also avoids the real risk of obtaining less, or nothing at all, from Defendants after continued litigation. In light of the foregoing, an extensive analysis of the evidence, the relative strengths and weaknesses of the claims and defenses asserted, the serious issues and disputes remaining among the Parties, and the time and expense of further litigation, Lead Plaintiffs and

---

[4] The Joint Declaration is an integral part of this submission. In order to avoid repetition, the Court is respectfully referred to ¶¶8-26 of the Joint Declaration for a full discussion of the factual and procedural history of the Action, the background of the claims asserted, Lead Plaintiffs' investigation and discovery, and the negotiations leading to the Settlement. *See* Appendix of Declarations in Support of Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Award of Attorneys' Fees and Expenses ("Appendix" or "Appx.") submitted herewith, at 9-18.

their counsel have concluded that the Settlement is fair, reasonable and adequate and in the best interests of the Class.

Further, the overwhelmingly positive reaction of the Class is also compelling support for the Settlement.  Pursuant to the Court's Order for Notice and Hearing, the Notice was mailed to over 17,500 potential Class Members or their nominees and a summary notice was published in *Investor's Business Daily*.  Gilardi also posted information regarding the Settlement on its website, www.gilardi.com, and provided access to downloadable versions of the Notice and Proof of Claim.  *See infra* § II(D).  As of the filing of this Memorandum, no objections to the Settlement, or any part thereof, have been received, and only three Class Members have requested to be excluded from the Class.[5]  The complete absence of objections and small number of requests for exclusion confirms Lead Plaintiffs' decision to resolve the Action in exchange for the payment of the Settlement Amount and strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable and adequate.

For the reasons stated herein and in the accompanying Joint Declaration, Lead Plaintiffs respectfully request that the Court grant final approval to the Settlement.  Moreover, the plan for allocating the settlement proceeds will fairly and equitably distribute the Net Settlement Fund among the Authorized Claimants and also warrants the Court's final approval.

## II.     THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E)

### A.     The Law Favors and Encourages Settlements

Courts have long observed a general policy favoring the settlement of disputed claims. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Newby v. Enron Corp.*, Civil Action No.

---

[5] The deadline for objecting or requesting exclusion from the Class expired on October 15, 2009.

H-01-3624, 2008 U.S. Dist. LEXIS 84656, at **40-41 (S.D. Tex. Sept. 8, 2008). The Fifth

Circuit has consistently held that settlements "will be upheld whenever possible because they are

a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life*

*Ins. Co*., 559 F.2d 426, 428 (5th Cir. 1977) (internal citation omitted). Particularly when

reviewing settlements of class actions, this Circuit has held that "there is an overriding public

interest in favor of settlement," because such class action suits "have a well deserved reputation

as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Purdie*

*v. Ace Cash Express, Inc*., No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D.

Tex. Dec. 11, 2003). Because of this complexity, however, a court in reviewing a proposed class

action settlement should "not decide the merits of the case or resolve unsettled legal questions."

*Carson v. American Brands, Inc.*, 450 U.S. 79, 88 fn. 14 (1981).

    In addition, courts have found a strong initial presumption of fairness attaches to a

proposed settlement if the settlement is reached by experienced counsel after arm's-length

negotiations. *See United States v. Texas Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see*

*also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as

the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption

of fairness attaches to the proposed settlement."). To a large degree, in determining the fairness

and reasonableness of a proposed settlement, courts must rely on the judgment of competent

counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. General Motors*

*Corp*., 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel

negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know

where the bones are buried."). Thus, if experienced counsel determine that a settlement is in the

class' best interests, "the attorney's views must be accorded great weight." *Pettway v. American*

*Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).  Here, the Settlement was reached by experienced, fully-informed counsel after extensive investigation, substantial formal discovery and hard-fought settlement negotiations -- including two formal mediations under the auspices of a seasoned mediator.  Thus, little doubt exists that this Settlement is entitled to the presumption of fairness dictated by Fifth Circuit law.

### B.     The Fifth Circuit's Standards Governing Class Action Settlements

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a class action may not be dismissed or compromised without the approval of the court.  The standard for reviewing a proposed settlement of a class action by courts in the Fifth Circuit, as in other circuits, is whether the proposed settlement is "fair, adequate and reasonable" and whether it has been entered into without collusion between the parties.  *Cotton*, 559 F.2d at 1330.  In applying this standard, courts must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation."  *Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

In determining whether a class action settlement is fair, reasonable and adequate, courts in the Fifth Circuit typically consider the following six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives and absent class members.

*Reed*, 703 F.2d at 172; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (internal citations omitted).  As demonstrated herein and in the Joint Declaration, the application of the foregoing factors supports a finding that the Settlement is fair, reasonable and adequate and warrants the Court's final approval.

6

C.    **An Analysis of the Fifth Circuit's *Reed* Factors Supports Approval of the Settlement**

1.    **The Range of Possible Recovery**

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if case goes to trial." *In re Chicken Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir. 1982); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). Moreover, "[t]he present settlement, achieved after years of active litigation, must be balanced against the expenses and delay necessary to achieve a potentially larger result after trial and appeals." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006); *see also In re Enron Sec., Derivative and ERISA Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("the settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand"). Here, the Class will receive $7,500,000 in exchange for the release of all claims against Defendants. According to Lead Plaintiffs' expert's damages estimate, the Settlement represents a recovery of approximately 9% of the Class' maximum statutory damages.[6] Joint Decl., ¶¶29-30; Appx. at 19.

If the Action progressed, Defendants would have argued and a jury may have found that Lead Plaintiffs' damages were significantly less than the alleged statutory maximum of

---

[6] *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding settlement resulting in approximately 9% of the maximum potential recovery to be "higher than the median percentage of investors losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

approximately $85 million.[7]  Indeed, Section 11 of the Securities Act of 1933 ("Securities Act")

affords Defendants with a negative causation defense, which provides that Defendants are only

liable for the portion of statutory damages caused by the alleged misstatements and omissions.

*See, e.g., In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 861, 865 (N.D. Tex. 2005).  Here,

Defendants argued that the August 8, 2007 decline in the price of Heelys common stock was

caused by the Company's announcement of its lower fourth-quarter earnings forecast, and not

any "corrective" disclosure regarding knock-off products, the safety of Heelys' wheeled-shoes or

consumer demand.[8]  If Defendants were successful in proving this defense, Section 11 damages

could have fallen by tens of millions of dollars.  Joint Decl., ¶30; Appx. at 19.

     In addition, Defendants also asserted a tracing argument -- contending that because

Company insiders who held non-IPO shares of Heelys common stock were free to sell their stock

on the open market following the expiration of the Company's lock-up agreement, any Class

Member who purchased shares of Heelys common stock beginning on or after June 11, 2007

would be unable to trace their shares to the IPO and thus, unable to prove Section 11 damages.

Even if Lead Plaintiffs were successful in establishing liability and causation, Defendants'

---

[7] Under the Securities Act, damages are generally computed as the difference between the amount paid for the stock (not exceeding the offering price), and its value at the time of suit or, if sold prior to or during the pendency of the act, the price at which it was sold.  15 U.S.C. § 77k(e).  In this case, Heelys common stock was sold for $21.00 in its IPO, but traded for just $9.49 per share on the date this Action was commenced, August 27, 2007.  Thus, based on an estimate of 7.38 million shares issued in the IPO, the alleged statutory measure of damages would be $85 million (7.38 million x ($21.00 - $9.49)).  Joint Decl., ¶30, fn. 19; Appx. at 19.

[8] On August 7, 2007, the Company announced, *inter alia*, that it was significantly lowering its full-year revenue and earnings outlook, citing "challenges at retail related primarily to an over-inventioned position of product at many of the Company's domestic accounts."  It was also reported that retailers were reluctant to place significant fourth-quarter orders, further supporting the need to reduce Heelys' sales forecast.  The August 2007 announcement allegedly caused the price of Heelys common stock to fall 48%, from $21.99 to $11.42 per share.  Joint Decl., ¶14; Appx. at 12.

tracing argument, if accepted by a jury, would significantly limit damages.  Joint Decl., ¶31;

Appx. at 20.  Thus, without exposing the risks of taking this Action through summary judgment

proceedings and trial, the Settlement represents a substantial recovery for the Class.

### 2.    The Probability of Plaintiffs' Success on the Merits

While the Court sustained all of Lead Plaintiffs' claims against Defendants at the

pleading stage, Lead Plaintiffs recognized, nonetheless, that ultimate success against the

Defendants at summary judgment and trial was not ensured.  *See In re AremisSoft Corp. Sec.*

*Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might

present at trial, victory in litigation is never guaranteed."); *In re Michael Milken & Assoc. Sec.*

*Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements,

courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'").

In determining the Settlement's fairness, Lead Plaintiffs' Counsel heavily considered and

analyzed the potential risks to continued litigation, and in light of such risks, believe the

Settlement is in the best interests of the Class.

### a.    <u>Risks to Establishing Defendants' Liability</u>

In order to prevail on their Securities Act claims, Lead Plaintiffs have the burden of

establishing that the Company's registration statement and prospectus filed with the SEC in

connection with the Company's IPO (the "December Prospectus") contained an "untrue

statement of material fact or omitted to state a material fact required to be stated therein or

necessary to make the statement therein not misleading."  *Ryan v. Flowserve*, 245 F.R.D. 560,

577 (N.D. Tex. 2007), *rev'd in part, vacated in part*, *Alaska Elec. Pension Fund v. Flowserve*

*Corp.*, 572 F.3d 221 (5th Cir. 2009) (quoting 15 USC § 77k(a)).  However, unlike other

securities cases where plaintiffs are able to come forward with affirmative acts by Defendants

that create an inference of liability, this Action did not involve admissions by Defendants, criminal convictions of any Defendant or a financial restatement.  Joint Decl., ¶33; Appx. at 21.

Throughout the Action, Defendants vigorously contested falsity of the alleged misleading statements contained in the December Prospectus, and were adamant that the statements were not actionable.  Specifically, Defendants asserted that Heelys' December Prospectus adequately disclosed all of the information Lead Plaintiffs claimed was omitted, including: (i) the safety risks associated with the use of Heelys' wheeled-shoes and its effect on consumer demand for the Company's products; (ii) the extent and effect of counterfeit or knock-off products on Heelys' sales; and (iii) Heelys' ability to monitor consumer demand.  Further, Defendants contended that any adverse conditions which arose with respect to the Company arose after the IPO, and were not known at the time the Company issued the December Prospectus.  Defendants also asserted additional defenses to liability, including, that: (i) the alleged misstatements and omissions were forward-looking statements protected by the safe harbor provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (ii) the Individual Defendants and Capital Southwest reasonably and in good faith relied on the work and conclusions of professionals and experts in executing and authorizing the execution and publication of the December Prospectus; and (iii) Lead Plaintiffs would not be able to overcome Defendants' negative causation defense (as discussed herein), and with respect to the Underwriter Defendants, their due diligence defense.[9]  Had the Settlement not been reached, Lead Plaintiffs would expect Defendants to build

---

[9] While the Company is strictly liable for any material misstatements or omissions under Section 11, the statute provides the Underwriter Defendants with a "due diligence" defense to liability if they had "reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  *See* 15 U.S.C. § 77k(b)(3).  Here, the Underwriter Defendants asserted that

foundations for each of these defenses, and others, and to assert each of them at summary judgment, trial and on appeal. Joint Decl., ¶34; Appx. at 21. *See Krin v. BancTexas Group, Inc.*, 989 F. 2d 1435, 1445 (5th Cir. 1993) (affirming summary judgment in defendant's favor).

### b.     Risks to Establishing the Class' Damages

Even if Lead Plaintiffs succeeded in overcoming each and every defense the Defendants could raise with respect to liability, Lead Plaintiffs also would be required to make certain showings concerning damages and overcoming or rebutting Defendants' inevitable negative causation defense.[10] While Defendants' burden of establishing this defense is heavy, the burden is not insurmountable and would require Lead Plaintiffs to prove that their losses were actually caused when the "market recognized a connection between the events disclosed and the fraud" and not by some other factor. *Ryan*, 245 F.R.D. at 579. As noted above, Defendants would have asserted that the stock drops at issue in this Action were caused, at least in part, by unrelated events, rather than any alleged misrepresentations or omissions of material fact contained in the December Prospectus (*i.e.*, that the August 8, 2007 decline in the price of Heelys common stock was caused by the Company's announcement of its lower fourth-quarter earnings forecast, and not any "corrective" disclosure regarding knock-off products, safety of Heelys' wheeled-shoes or consumer demand). Joint Decl., ¶35; Appx. at 22. *See McKowan Lowe & Co. v. Jasmine, Ltd.*, Nos. 94-5522 (RBK) & 96-2318 (RBK), 2005 U.S. Dist. LEXIS 32164, at **36-37 (D.N.J. June 30, 2005) (finding that where defendants adduced proof that the alleged misrepresentations did

---

they followed a rigorous due diligence process that fully complied with all of their statutory obligations as well as with industry norms. Joint Decl., ¶34, fn. 20; Appx. at 22.

[10] "Once the plaintiff establishes a prima facie claim for a §11 violation, the court must presume loss-causation – that the defendant's material misstatement or omission caused the plaintiff's economic harm." *Ryan*, 245 F.R.D. at 577.

not cause plaintiffs' losses, defendants were entitled to summary judgment on plaintiffs' Section 11 claim).

Although Lead Plaintiffs would present expert testimony on the issues of causation and damages, one cannot predict how a jury will weigh competing experts' testimony, and the crucial element of damages would likely be reduced at trial to a "battle of the experts." Lead Plaintiffs' Counsel have sufficient experience to recognize that in such a battle there exists the substantial possibility that a trier of fact could be swayed by Defendants' experts, who would seek to minimize or eliminate the amount of Lead Plaintiffs' losses by showing that any losses were attributable to factors other than the alleged misstatements and omissions. Joint Decl., ¶36; Appx. at 23. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' with no guarantee whom the jury would believe"); *Streber v. Hunter*, 221 F.3d 701, 726, *reh'g denied en banc*, 233 F.3d 576 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible); *see also In re OCA, Inc. Sec. and Derivative Litig.*, Civil Action No: 05-2165 Section R(3), 2009 U.S. Dist. LEXIS 19210, at **47-48 (E.D. La. Mar. 2, 2009) ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable."). Therefore, the uncertainties concerning Lead Plaintiffs' ability to prove liability, causation and/or win a verdict for damages in an amount greater than the Settlement support approval of the Settlement.

### 3.    The Proposed Settlement is Free from Fraud and Collusion

"[T]here is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms length negotiations." *Faircloth v. Certified Fin. Inc.*, No. 99-3097 SECTION "T" (3), 2001 U.S. Dist. LEXIS 6793, at *12 (E.D. La. May 15, 2001).

13

Moreover, if the terms of the proposed settlement are fair, courts generally will assume the negotiations were proper. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 846 (E.D. La. 2007); *In re Corrugated Container Antitrust Litig.*, 643 F. 2d 195, 212 (5th Cir. 1981). This Settlement clearly presents the indicia of arm's-length negotiations.

There is no question that the Settlement was entered into at arm's-length and without fraud or collusion. *See, e.g., San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 458 (W.D. Tex. 1999) (finding that there was no evidence of collusion, but rather, that "the settlement was the result of hard fought, arm's length negotiations"). As discussed in the Joint Declaration at ¶¶25-26, the Parties engaged in hard-fought arm's-length negotiations, which included numerous telephone conferences and two full-day formal mediations with the assistance of a retired federal judge followed by additional months of negotiating the terms of the Settlement and related documents. *See* Appx. at 17-18. At all times during these negotiations, both sides zealously advocated their respective positions. But for the Settlement -- an agreement that Lead Plaintiffs' Counsel believe to be in the best interests of the Class -- Lead Plaintiffs' Counsel were prepared to continue prosecuting the Action against Defendants. Joint Decl., ¶37; Appx. at 23. Therefore, the circumstances of the Parties' negotiations clearly demonstrate that the Settlement was the result of hard-fought negotiations by well-informed counsel.

### 4. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval of the Settlement

Settlement avoids the risks and burdens of potentially protracted litigation, avoids further costs of litigation and provides relief for the class sooner than further litigation would. *See Ayers*, 358 F. 3d at 369; *see also Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp.

2d 254, 258 (S.D.N.Y. 2003) ("'it is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'") (internal citation omitted).

As set forth above, Lead Plaintiffs faced real risks to establishing liability, causation and the full amount of the Class' statutory damages if this Action continued. Lead Plaintiffs' claims also involved numerous complex legal, financial and factual issues that would have required Lead Plaintiffs to conduct additional document discovery, take numerous depositions and engaged in extensive expert discovery. In addition, given the location of the Company's customers, Lead Plaintiffs may have encountered additional complexities associated with obtaining discovery from witnesses located outside the United States. Joint Decl., ¶38; Appx. at 23. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (noting difficulty of actions where witnesses and documents are located abroad, beyond the court's subpoena power).

The expense and delay of further litigation also counsel in favor of the Settlement. If the Settlement had not been reached, Lead Plaintiffs' Counsel would anticipate reviewing hundreds of thousands of pages of additional documents and taking many depositions, including depositions of third parties located throughout the United States and abroad. Following the close of merits discovery, the Parties would engage in expert discovery -- often the most costly phase of complex litigation -- which would likely require each side to retain damages experts, as well as experts in the industry of wheeled-footwear. The costs associated with completing discovery, not to mention the costs associated with summary judgment, including *Daubert* motions, preparation for trial, a trial, and the inevitable appeals, would be high. One can easily conclude that this Action, if taken to trial, would require additional years to conclude, necessitating many

15

hours of the Court's time and resources.  Joint Decl., ¶39; Appx. at 24.  *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will result in no recovery).  Moreover, years would pass before the Class would receive a recovery, if any.  *See In re Heritage Bond Litig.*, MDL Case No. 02-ML-1475DT, 2005 U.S. Dist. LEXIS 13555, at *28 (C.D. Cal. June 10, 2005) ("much of the value of a settlement lies in the ability to make funds available promptly") (citation omitted).

### 5.    The Stage of the Proceedings and the Amount of Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation."  Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.45 (4th ed. 2002); *see also OCA, Inc.*, 2009 U.S. Dist. LEXIS 19210, at **39-40 ("The question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it.").  Further, the trial court "may legitimately presume that counsel's judgment [that it has the information necessary to evaluate a settlement] is reliable."  *Corrugated Container*, 643 F.2d at 211.

By the time the Parties reached the Settlement, Lead Plaintiffs' Counsel had sufficient knowledge and understanding of the merits of the claims alleged in the Action and the defenses that would be asserted by Defendants to determine that the Settlement is fair, reasonable and

adequate.  Lead Plaintiffs' Counsel obtained their knowledge and expanded their theories of liability through drafting a detailed amended complaint; investigating and researching the facts and issues required to craft the Complaint; fully briefing and arguing issues raised in motions to dismiss filed by two separate sets of defendants; engaging in substantial document discovery, including the review and analysis of approximately 800,000 pages of documents produced by Defendants and an additional 50,000+ pages produced by third parties; and drafting a detailed mediation statement.  Lead Plaintiffs' Counsel then used the information at their disposal to participate in hard-fought settlement negotiations with Defendants, including two formal mediations.  The knowledge and insight gained by Lead Plaintiffs' Counsel over the course of this Action provided Lead Plaintiffs' Counsel with sufficient information to evaluate the strengths and weaknesses of the Class' claims and Defendants' defenses, as well as the likelihood of obtaining a larger recovery from the Defendants had the Action continued, and guided Lead Plaintiffs' Counsel in their recommendation of the Settlement to Lead Plaintiffs.  Joint Decl., ¶40; Appx. 24.

### 6.    The Opinions of Class Counsel, Lead Plaintiffs and the Class

"Counsel are the Court's main source of information about the settlement . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d at 852 (internal citations omitted). "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, Cause No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *72 (N.D. Tex. Nov. 8, 2005) (internal citation omitted); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292

17

(W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) (holding that the opinions of experienced counsel "deserve appropriate deference from the Court").

Given that the Settlement provides a substantial recovery for the Class and given the risks in litigating this Action further, it is Lead Plaintiffs' Counsel's opinion that it is probable that a better result might not be obtained.  Second, the fact that Lead Plaintiffs have also concluded that the proposed Settlement is a fair, reasonable, and adequate compromise of the claims against the Defendants, should be given considerable weight.  Third, the reaction of the Class to the Settlement has been overwhelmingly supportive.  Following the dissemination of over 17,500 copies of the Notice to potential Class Members, and as of the October 15, 2009 deadline for filing objections and/or submitting requests for exclusion, not one Class Member has objected to any part of the Settlement, and only three requests for exclusion from the Class have been received.  *See Quintanilla v. A&R Demolition Inc.*, Civil Action No. H-04-1965, 2007 WL 5166849, at *5 (S.D. Tex. May 7, 2007) (the reaction of the class to the settlement should be considered and held that here, where there was no objections, it demonstrated that the class "overwhelmingly" was in favor of settlement); *Maher v. Zapata Corp.*, 714 F.2d 436, 456 (5th Cir. 1983) ("Other factors favoring approval of the settlement here are the minimal nature of shareholder objection.").  This absence of dissent militates heavily in favor of the Court's final approval of the Settlement.  Joint Decl., ¶41; Appx. at 25.

Therefore, Lead Plaintiffs' Counsel respectfully submit that the analyses set forth above and all of the circumstances of the Settlement demonstrate that the Settlement is fair, reasonable

and adequate.

### D.    Notice to the Class Meets the Requirements of Due Process, the PSLRA, and Rule 23

Finally, the notice program, which was previously approved by the Court, has been instituted in accordance with the Federal Rules of Civil Procedure, which calls for "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See In re OCA, Inc. Sec. and Derivative Litig.*, Civil Action No: 05-2165 Section R(3), 2008 U.S. Dist. LEXIS 84869, at **25-26 (E.D. La. Oct. 17, 2008). Pursuant to the Order for Notice and Hearing, the Court-approved Notice was mailed to all identified Class Members, providing them two months for objecting to the Settlement, or requesting exclusion from the Class, and three months' notice of the final approval hearing scheduled for November 17, 2009. The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including without limitation: (i) Lead Plaintiffs' estimate of the per share recovery; (ii) the manner in which the Net Settlement Fund will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement. To date, over 17,500 copies of the Notice had been mailed out.

In addition, the Court-approved Summary Notice, which provided information about the Settlement and how to obtain a copy of the full Notice, was published in the national edition of *Investor's Business Daily*. Gilardi also posted information about the Settlement on its website, www.gilardi.com, as well as provided access to downloadable versions of the Notice and Proof of Claim, and established a toll-free phone line to accommodate potential claimant inquiries.

This notice program complies with the requirements of the Federal Rules of Civil Procedure, the PSLRA and due process, and is similar to the procedures approved in other cases.[11]  *See* 15 U.S.C. § 78u-4(a)(7); *see also Santos v. Camacho*, Civil Case No. 04-00006, 2007 U.S. Dist. LEXIS 1668, at **24-25 (D. Guam Jan. 9, 2007) (notice approved where each class member would be mailed a notice and notice would also be published, and where the proposed notice adequately described the facts of the case, the members of the class, the settlement terms, information regarding attorney's fees, information on how class members may object to the settlement, and contact information for class counsel and defense counsel).

## III.    CERTIFICATION OF THE CLASS IS PROPER

In *Amchem Products v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that a class seeking certification for settlement purposes must satisfy the applicable requirements of Rule 23, *i.e.*, numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority.  *See, e.g., In re Enron Sec. and ERISA Litigs.*, Civ. No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes).  In securities fraud cases, "when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward" for settlement purposes.  *In re Reliant Sec. Litig.*, Master File No. H-02-1810, 2005 U.S. Dist. LEXIS 9716, at *13 (S.D. Tex. Feb. 18, 2005) (citations omitted).  This Court has already preliminarily found the Action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes.  *See* Order

---

[11]  Prior to the final settlement hearing in this Action, Gilardi will provide the Court with a declaration regarding the specifics of their notice campaign.

21

for Notice and Hearing. As detailed below, the proposed Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

A.    **Numerosity, Commonality and Typicality**

The Class meets the numerosity, commonality, and typicality requirements of Rule 23(a)(1)-(3).  Over 17,500 copies of the Notice were sent to potential Class Members who purchased shares of Heelys common stock pursuant to, or traceable to, the Company's December 2006 IPO.  *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) ("[T]he prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities.").  Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*, whether the December Prospectus filed with the SEC in connection with the Company's IPO omitted and/or misrepresented material facts and whether Defendants breached any duty to convey material facts or to correct material facts previously disseminated).  In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities fraud cases.  *See also In re Firstplus Fin. Group, Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446, at *11 (N.D. Tex. Oct. 23, 2002) ("Where there is at least one issue, the resolution of which will affect all or a significant number of putative class members, commonality has been found.").  Further, the proposed class representatives' claims are "typical" of other Class Members' claims because they purchased Heelys common stock pursuant to, or traceable to, the Company's IPO at artificially inflated prices and thus have alleged damages similar to other Class Members.  Joint Decl., ¶¶42-45; Appx. at 26-27.  *See also In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 565 (E.D. Tex. 2005) ("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

B.    **Adequacy of Representation**

The adequacy requirement of Rule 23(a)(4) requires class representative(s) to demonstrate that: (i) the representative(s) have interests that are not antagonistic to the interests of other members of the class, and (ii) the representative(s) have retained attorneys who are qualified, experienced and able to conduct the litigation.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Barrie v. Intervoice-Brite, Inc.*, Civil Action No. 3:01-CV-1071-K, 2006 U.S. Dist. LEXIS 69299, at *13 (N.D. Tex. Sept. 25, 2006).  Thus, this inquiry lies with the "interests of the class representative, and the competency of counsel." *Reliant*, 2005 U.S. Dist. LEXIS 9716, at *23.  Here, Lead Plaintiffs -- the proposed class representatives -- have retained highly competent counsel with extensive experience litigating complex securities class actions, which this Court has already approved.  *See OCA, Inc.*, 2008 U.S. Dist. LEXIS 84869, at **34-35; *see also* firm biographies of Barroway Topaz and Coughlin Stoia submitted herewith.  In addition, this Court has already designated the proposed class representatives as Lead Plaintiffs pursuant to the PSLRA, which provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Joint Decl. ¶46; Appx. at 27.  Thus, Lead Plaintiffs and Lead Plaintiffs' Counsel meet the adequacy requirements of Rule 23.

C.    **Predominance of Common Issues and Superiority**

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy.  In this Action, both of these requirements are satisfied.  First, in order to satisfy the predominance requirement, it must be shown that the issues subject to

24

generalized proof predominate over the issues subject to only individualized proof.  As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  521 U.S. at 625; *see also Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *53 (finding predominance to be "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws") (internal citations omitted).  Here, the issues of liability and damages are common to all Class Members and clearly predominate over any individual issues.  Second, resolution of this Action through a class action is far superior to litigating hundreds or thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in Heelys common stock.  Joint Decl., ¶47; Appx. at 28.  *See Gibb v. Delta Drilling Co.*, 104 F.R.D. 59, 71 (N.D. Tex. 1984) ("Plainly, many small investors, purchasers of 100 or 200 shares, while clearly not without means, have not suffered sufficient damages to warrant an individual action.  Those purchasers will have no viable recourse if this [class certification] motion is denied.") (internal quotation omitted).  Further, "the utility of the class action to cases involving the securities laws has been repeatedly recognized." *Id.*, 104 F.R.D. at 71.

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, there are no issues which would prevent the Court from certifying this Class for settlement purposes and appointing Lead Plaintiffs as the Class Representatives.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord Chicken Antitrust Litig.*, 669 F.2d at 238. The standard for approving a plan of allocation is the same as the standard for approving the

settlement: the plan must be "fair, adequate and reasonable" and must not be "the product of collusion between the parties." *In re Chicken Antitrust Litig.*, 669 F.2d at 238. This analysis is to be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Id.* In addition, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *27 (S.D.N.Y. Jan. 31, 2007). Lead Plaintiffs' Counsel prepared the proposed Plan of Allocation (the "Plan") after careful consideration and analysis, and without reference to any particular trading patterns of any of the Lead Plaintiffs. Joint Decl., ¶48; Appx. at 28.

The Plan reflects that the price of Heelys common stock was artificially inflated at the time of the Company's December 2006 IPO and that the inflation was fully dissipated when this Action was filed on August 27, 2007. The amount of each Class Member's claim will be calculated by subtracting the sales price of shares sold prior to the initial complaint being filed from the purchase price of such shares (with the purchase price not to exceed the IPO price of $21.00 per share).[12] The Plan is not a formalized damage study as it does not countenance any of Defendants' negative loss causation arguments, but rather, it is a simplified methodology based upon the statutory damage calculations which is designed solely to compare one Class Member to another through their respective transactions in Heelys common stock purchased pursuant to, or traceable to, the Company's IPO. Joint Decl., ¶49; Appx. at 28.

The Plan was fully disclosed in the Notice that was disseminated to over 17,500 potential

---

[12] For shares of Heelys common stock purchased pursuant to, or traceable to, the Company's December 2006 IPO which were still held on the date the suit was brought, August 27, 2007, the Plan assumes that the value of these shares is the closing price of Heelys common stock on August 27, 2007, or $9.49 per share. Joint Decl., ¶49, fn. 22; Appx. at 29.

Class Members, and to date, following the expiration of the objection period, not a single Class Member has filed an objection to the Plan. Differences in the treatment of Class Members are made only with respect to the price(s) paid for Heelys common stock (in most cases, $21.00) and the timing of any such sale(s) of Heelys common stock purchased pursuant to, or traceable to, the Company's IPO. Overall, if the total claims for all Authorized Claimants exceed the Net Settlement Fund, each Authorized Claimant's share of the Net Settlement Fund will be determined based upon the percentage that his, her or its claim bears to the total of the claims for all Authorized Claimants. Joint Decl., ¶50; Appx. at 29. *See Merrill Lynch*, 2007 U.S. Dist. LEXIS 9450, at *39 ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is reasonable."); *see also In re Broadcom Corp. Sec. Litig.*, Case No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976, at *17 (C.D. Cal. Sept. 12, 2005) (approving plan of allocation where the allocation was pro rata across the Class). Lead Plaintiffs' Counsel believe that this method of allocation is fair, reasonable and adequate and that the Plan should be approved.

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs and Lead Plaintiffs' Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and that this Court should grant final approval of the Settlement and the Plan of Allocation, and certify the Class for settlement purposes.

DATED:  October 27, 2009                Respectfully submitted,

                                        COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                        ELLEN GUSIKOFF STEWART

                                               *s/ Ellen Gusikoff Stewart*
                                          ELLEN GUSIKOFF STEWART

                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101-3301
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)

                                        COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                        DENNIS J. HERMAN
                                        SHIRLEY H. HUANG
                                        BING Z. RYAN
                                        100 Pine Street, Suite 2600
                                        San Francisco, CA  94111
                                        Telephone:  415/288-4545
                                        415/288-4534 (fax)

                                        BARROWAY TOPAZ KESSLER
                                        MELTZER & CHECK, LLP
                                        ANDREW L. ZIVITZ
                                        KAREN E. REILLY
                                        MARK DANEK
                                        280 King of Prussia Road
                                        Radnor, PA  19087
                                        Telephone: 610/667-7706
                                        610/667-7056 (fax)

                                        Co-Lead Counsel for Plaintiffs

28

KENDALL LAW GROUP, LLP
JOE KENDALL
State Bar No. 11260700
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

Liaison Counsel

CERTIFICATE OF CONFERENCE

On Tuesday, October 27, 2009, I received e-mail messages from Kenneth P. Held of Vinson & Elkins LLP, on behalf of the Heelys Defendants, and Ellen Sessions of Fulbright & Jaworski L.L.P., on behalf of the Underwriter Defendants, informing me that Defendants do not oppose this motion.


_____
*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 27, 2009.

*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: elleng@csgrr.com

# Mailing Information for a Case 3:07-cv-01468-K

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rodney Acker**
  racker@fulbright.com

- **Stuart L Berman**
  sberman@btkmc.com

- **Mary K Blasy**
  mblasy@scott-scott.com,efile@scott-scott.com

- **Elizabeth C Brandon**
  egreen@velaw.com,korourke@velaw.com

- **Roger F Claxton**
  roger@claxtonlaw.com

- **Mark S Danek**
  mdanek@btkmc.com,dpotts@btkmc.com

- **Lionel Z Glancy**
  lglancy@glancylaw.com,info@glancylaw.com

- **Roger B Greenberg**
  rgreenberg@schwartz-junell.com,sdoring@schwartz-junell.com

- **Kenneth P Held**
  kheld@velaw.com,kmcspadden@velaw.com

- **Dennis J Herman**
  dennish@csgrr.com,jdecena@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Robert J Hill**
  rhill@hillandhill-law.com

- **Karen L Hirschman**
  khirschman@velaw.com,randerson@velaw.com

- **Shirley H Huang**
  shirleyh@csgrr.com,jdecena@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Daniel Jude Kelly**
  dkelly@velaw.com,vgreen@velaw.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com

- **Hamilton Lindley**
  hlindley@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Gerard G Pecht**
  gpecht@fulbright.com,amorgan@fulbright.com,pstokes@fulbright.com

- **Karen E Reilly**
  kreilly@btkmc.com

- **Bing Z Ryan**
  bryan@csgrr.com

- **Ellen B Sessions**
  esessions@fulbright.com

- **Evan J Smith**
  esmith@brodsky-smith.com,mackerman@brodsky-smith.com

- **Michelle S Spak**
  mspak@velaw.com,sadavis@velaw.com

- **Ellen Gusikoff Stewart**
  elleng@csgrr.com,jstark@csgrr.com

- **Allen W Yee**
  ayee@velaw.com,smorton@mortonpllc.com,nwest@velaw.com

- **Andrew L Zivitz**
  azivitz@btkmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Nicholas H Politan
Nicholas H Politan LLC
5 Becker Farm Rd
Roseland, NJ 07068
```