UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN RINES, On Behalf of Himself and All Others Similarly Situated, | § § § | Civil Action No. 3:07-cv-01468-K **(Consolidated)** |
| Plaintiff, | § § | <u>CLASS ACTION</u> |
| vs. | § § | |
| HEELYS, INC., et al., | § § | |
| Defendants. | § § § § | |
| | § | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE REQUESTED FEE SHOULD BE AWARDED BASED ON A
      PERCENTAGE OF THE RECOVERY OBTAINED.........................................5

      A.    Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They
            Created ...................................................................................................5

      B.    Fees in Common Fund Cases Should Be Based on a Percentage of the
            Recovery .................................................................................................6

            1.    The Supreme Court Has Repeatedly Held that Fees in Common
                  Fund Cases Are Properly Calculated Based on a Percentage of the
                  Recovery .......................................................................................6

            2.    A Majority of Courts of Appeal Have Approved the Percentage-of-
                  the-Recovery Method....................................................................8

            3.    Numerous District Courts in This Circuit Have Used the
                  Percentage-of-the-Recovery Method to Determine Reasonable
                  Attorneys' Fees .........................................................................10

      C.    The Requested Percentage Is Fair and Reasonable and Is Consistent with
            Fee Awards in Comparable Cases From This District...........................12

      D.    The Requested Fee Is Consistent with Contingent Fee Arrangements
            Negotiated in Non-Class Litigation ......................................................14

III.  THE REASONABLENESS OF THE PERCENTAGE FEE REQUESTED IS
      CONFIRMED BY AN ANALYSIS OF THE *JOHNSON* FACTORS ............14

      A.    Time and Labor Required ......................................................................15

      B.    Novelty and Difficulty of the Issues .....................................................16

      C.    The Amount Involved and Results Obtained..........................................18

      D.    Skill Required: the Experience, Reputation, and Ability of the Attorneys............19

      E.    Preclusion of Other Employment...........................................................21

      F.    Whether the Fee Is Fixed or Contingent ...............................................21

      G.    The Undesirability of the Case ..............................................................22

      H.    The Customary Fee and Awards in Similar Cases.................................23

**Page**

IV.  CLASS MEMBER REACTION ........................................................23

V.   PLAINTIFFS' COUNSEL ARE ENTITLED TO BE PAID FOR THEIR
     REASONABLE LITIGATION EXPENSES AND INTEREST ......................................24

VI.  CONCLUSION..........................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...................................................................22

*Barrie v. Intervoice-Brite, Inc.*,
   397 F.3d 249 (5th Cir. 2005) ......................................................................3

*Barrie v. Intervoice-Brite Inc.*,
   409 F.3d 653 (5th Cir. 2005) ......................................................................3

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)....................................................................................6

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................ *passim*

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...................................................................5, 6, 7, 11

*Brantley v. Surles*,
   804 F.2d 321 (5th Cir. 1986) ....................................................................15

*Brody v. Zix Corp., et al.*,
   No. 3-04-CV-1931-K, slip op.
   (N.D. Tex. June 16, 2008)........................................................................13

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...................................................................8

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)....................................................................................6

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds*,
   625 F.2d 49 (5th Cir. 1980) ......................................................................17

*Crowell v. Mannatech, Inc.*,
   Civil Action No. 3:07-cv-00238-K, slip op.
   (N.D. Tex. Mar. 10, 2009) ........................................................................13

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000)...............................................................19

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)..................................................................................18

**Page**

*Di Giacomo v. Plains All Am. Pipeline*,
No. H-99-4137, slip op. (S.D. Tex. Dec. 19, 2001) ..........................................13, 16, 19, 24

*Dolgow v. Anderson*,
43 F.R.D. 472 (E.D.N.Y. 1968) ...............................................................................6

*Faircloth v. Certified Fin. Inc.*,
No. 99-3097, 2001 U.S. Dist. LEXIS 6793
(E.D. La. May 16, 2001) .........................................................................................24

*Florin v. Nationsbank, N.A.*,
34 F.3d 560 (7th Cir. 1994) ....................................................................................8

*Foster v. Boise-Cascade, Inc.*,
577 F.2d 335 (5th Cir. 1978) ..................................................................................10

*Garza v. Sporting Goods Props., Inc.*,
No. SA-93-CA-108, 1996 WL 56247
(W.D. Tex. Feb. 6, 1996) .........................................................................................22

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ..................................................................................8

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ..................................................................................22

*In re Aetna Inc. Sec. Litig.*,
No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...............................................20

*In re "Agent Orange" Prod. Liab. Litig.*,
611 F. Supp. 1396 (E.D.N.Y. 1985), *aff'd in part and
rev'd in part on other grounds*,
818 F.2d 179 (2d Cir. 1987)....................................................................................19

*In re Apollo Group, Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
(D. Ariz. Aug. 4, 2008) ...........................................................................................22

*In re Catfish Antitrust Litig.*,
939 F. Supp. 493 (N.D. Miss. 1996).......................................................................12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................................................18

**Page**

*In re El Paso Elec. Co. Sec. Litig.*,
   No. EP-03-CA-0004-DB, slip op.
   (W.D. Tex. Sept. 15, 2005) ...........................................................................13

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   No. MDL 1446, 2004 WL 1900294
   (S.D. Tex. Aug. 5, 2004)...............................................................................24

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ..........................................................17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..............................................................................8

*In re Harrah's Entm't*,
   No. 95-3925, 1998 U.S. Dist. LEXIS 18774
   (E.D. La. Nov. 25, 1998) .......................................................11, 14, 15, 24

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
   (C.D. Cal. June 10, 2005) ..............................................................................19

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000)................................................................16, 20

*In re Intellicall Sec. Litig.*,
   No. 3:91-CV-0730-P, slip op.
   (N.D. Tex. Sept. 22, 1993) ............................................................................13

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C 02-1486-CW, Verdict Questions Form
   (N.D. Cal. Nov. 27, 2007)..............................................................................22

*In re Landry's Seafood Restaurants, Inc. Sec. Litig.*,
   No. H-99-1948, slip op. (S.D. Tex. June 13, 2002).......................................13

*In re Lease Oil Antitrust Litig.*,
   186 F.R.D. 403 (S.D. Tex. 1999).....................................................................5

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
   117 F.3d 721 (2d Cir. 1997)...........................................................................18

*In re ProNet, Inc. 1933 Act Sec. Litig.*,
   No. 3:96-CV-1795-P, slip op.
   (N.D. Tex. Nov. 19, 1997) .............................................................................13

Page

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
    No. 888, 1994 U.S. Dist. LEXIS 6621
    (E.D. La. May 18, 1994) ....................................................................12, 14, 21

*In re Ravisent Techs., Inc. Sec. Litig.*,
    No. 00-CV-1014, 2005 WL 906361
    (E.D. Pa. Apr. 18, 2005) ................................................................................23

*In re Rite Aid Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005)...........................................................................23

*In re Terra-Drill P'ships Sec. Litig.*,
    733 F. Supp. 1127 (S.D. Tex. 1990) ...............................................................18

*In re Thirteen Appeals Arising Out of the San Juan
Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)...............................................................................8

*In re Unistar Fin. Serv. Corp. Sec. Litig.*,
    No. 3:99-CV-1857-M, slip op.
    (N.D. Tex. Aug. 17, 2001) ..............................................................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .............................................................................8

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................16

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)...........................................................................................6

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .................................................................. *passim*

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996) ...............................................................................8

*Kaufman v. Motorola, Inc.*,
    No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
    (N.D. Ill. Sept. 19, 2000) .................................................................................18

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ...........................................................................14

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973) ...............................................................................7

**Page**

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976)...................................................................7, 8

*Longden v. Sunderman*,
    979 F.2d 1095 (5th Cir. 1992) .................................................................11, 12

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...................................................................3

*Miller v. Woodmoor Corp.*,
    No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
    (D. Colo. Sept. 28, 1978) .........................................................................17

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)..................................................................................5

*Prandini v. Nat'l Tea Co.*,
    557 F.2d 1015 (3d Cir. 1977)...................................................................16

*Rawlings v. Prudential-Bache Props.*,
    9 F.3d 513 (6th Cir. 1993) .......................................................................8

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)............................................................23

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...............................................................22

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077
    (N.D. Tex. Nov. 8, 2005) ........................................................... *passim*

*Shaw v. Toshiba Am. Info. Sys.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)....................................... *passim*

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
    365 F.3d 353 (5th Cir. 2004) ...................................................................3

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
    No. 4:00-CV-355y, slip op. (N.D. Tex. Mar. 9, 2005) ...................................13

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)..................................................................................5, 6

*Strong v. BellSouth Telecomms.*,
    137 F.3d 844 (5th Cir. 1998) ...................................................................11

Page

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) ............................................................8

*Trustees v. Greenough,*
  105 U.S. 527 (1882) .........................................................................6

*Turner v. Murphy Oil USA, Inc.,*
  472 F. Supp. 2d 830 (E.D. La. 2007) ............................................24

*United States v. 412.93 Acres of Land,*
  455 F.2d 1242 (3d Cir. 1972)..........................................................18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(6) ..............................................................................10, 24

**SECONDARY AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
  §2.02 ..................................................................................................6

Charles Silver, *Class Actions in the Gulf South Symposium:
Due Process and the Lodestar Method: You Can't Get There From Here,*
  74 Tul. L. Rev. 1809 (June 2000) ...................................................10

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent
Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?*
  (NERA Nov. 1996) ..........................................................................13

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications
of Economic Theory for Private Enforcement of Law through Class and
Derivative Actions,*
  86 Colum. L. Rev. 669 (May 1986)................................................10

*Manual for Complex Litigation* (3d ed. 1995)
  §24.12................................................................................................7

Third Circuit Task Force, *Court Awarded Attorney Fees*
  108 F.R.D. 237 (1985) ......................................................................6

## I.    INTRODUCTION

Counsel for Lead Plaintiffs in this consolidated securities class action (the "Litigation") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees of 30% of the Settlement Fund plus expenses of $223,971.42 incurred in the prosecution of the Litigation.[1]   The result obtained for the Class[2] – an all-cash settlement of $7.5 million – was achieved through the skill, tenacity, and effective advocacy of Plaintiffs' Counsel and represents a very good recovery.[3]   Plaintiffs' Counsel's efforts to date have been without compensation of any kind and their fee has been wholly contingent upon the result achieved.  Plaintiffs' Counsel's 30% fee request is well within the normal range of awards made in contingent fee matters of this type in this Circuit and in this Court, as well as in numerous decisions throughout the country, and is the appropriate method of compensating counsel for the result they have achieved.[4]

---

[1]    Submitted herewith in support of approval of the proposed settlement are Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and the Joint Declaration of Andrew L. Zivitz and Dennis J. Herman in Support of Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and Application for an Award of Attorneys' Fees and Expenses (the "Joint Decl.").  The Joint Declaration more fully describes the history of the Litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the settlement, and the risks of the Litigation.  *See* Appendix of Declarations in Support of Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and an Award of Attorneys' Fees and Expenses ("Appx."), submitted herewith, at Exhibit 1.  Also submitted herewith are submissions from each plaintiffs' firm which set forth the time and expenses incurred in prosecuting the Litigation.  Appx. at Exhibits 2-4.

[2]    Capitalized terms not defined herein are defined in the Stipulation of Settlement dated July 20, 2009 (the "Stipulation").

[3]    Pursuant to the Stipulation, the $7,500,000 settlement fund has already been deposited into an interest-bearing escrow account maintained on behalf of the Class (the "Settlement Fund").

[4]    Appendix A, attached hereto, is a listing of cases where district courts in class actions in this Circuit and other circuits have awarded fees of 30% or more of the settlement amount.

The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and, therefore, was risky and difficult from the outset.  The effect of the PSLRA is to make it harder for investors to bring, prosecute, and successfully conclude securities class actions.  Plaintiffs' Counsel and Lead Plaintiffs were mindful of the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than ever before, amid defendants' constant attempts to push the envelope and contours of the PSLRA.

In the face of this challenge and a heightened risk of dismissal, Plaintiffs' Counsel committed considerable resources and time in researching, investigating, and uncovering detailed facts to meet the requirements of the PSLRA pleading standards.  Plaintiffs' Counsel reviewed and analyzed voluminous publicly filed documents, financial reports, analysts' reports, and press releases concerning Heelys, Inc. ("Heelys" or the "Company").  In addition, Plaintiffs' Counsel, with the assistance of in-house and outside private investigators, located and interviewed numerous third party witnesses, including several former Heelys' employees and industry sources.  Plaintiffs' Counsel also consulted with experts in damages, materiality, and loss causation, and thoroughly researched the law pertinent to the claims and defenses asserted.

The result of these efforts was the highly detailed and fact-specific Consolidated Amended Class Action Complaint filed on March 11, 2008 ("Complaint"), specifying Defendants' alleged violations of the federal securities laws in connection with Heelys' initial public offering("IPO").  Not surprisingly, the Complaint was subject to numerous challenging arguments that Defendants made in support of their motions to dismiss, including: (a) that Lead Plaintiffs failed to adequately allege a materially false or misleading statement or omission in the Prospectus; (b) the Prospectus adequately disclosed risks and/or information related to safety, counterfeit, or knock-off products and consumer demand; (c) the alleged misstatements and omissions were forward-looking and protected by the safe-harbor provision of the PSLRA; and (d) the disclosures did not cause Lead

Plaintiffs' losses.  Plaintiffs' Counsel extensively researched and briefed each of these issues. Defendants' motions to dismiss presented a serious risk, since numerous securities fraud cases in this Circuit have been dismissed after the passage of the PSLRA.[5]  The Court ultimately denied the motions in their entirety, permitting Lead Plaintiffs to pursue formal discovery.

In addition to the extensive "informal" investigation Plaintiffs' Counsel performed prior to the lifting of the PSLRA-mandated discovery stay, which investigation included a review of all publicly-available information regarding the Company and interviews of former Heelys' employees and other industry sources, once the discovery stay was lifted, Lead Plaintiffs sought document discovery on Defendants and a number of third parties.  Ultimately, Defendants produced over 800,000 pages of documents, and more than 50,000 pages of documents were produced by third parties.[6]  *See* Joint Decl., ¶¶20-22; Appx. at 15-16.  Lead Plaintiffs also responded to the various discovery requests propounded by Defendants.  Lead Plaintiffs answered interrogatories and produced documents concerning their transaction in Heelys stock.

While discovery was proceeding, the parties agreed to enter into mediation in an attempt to resolve the Litigation.  The parties agreed to mediate before the Honorable Nicholas H. Politan (Ret.), a retired federal district judge and experienced mediator.  In advance of the first mediation session on February 24, 2009, the parties prepared detailed mediation statements.

---

[5]    In fact, in the years since the passage of the PSLRA, it appears that, while scores of securities class action complaints have been dismissed by district courts in this Circuit, to Plaintiffs' Counsel's knowledge very few dismissals have been reversed by the Fifth Circuit.  *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005); *Barrie v. Intervoice-Brite Inc.*, 409 F.3d 653 (5th Cir. 2005); *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004); *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009).

[6]    A fully-briefed motion to compel documents from the Underwriter Defendants was pending at the time this settlement was reached.

Plaintiffs' Counsel made it clear to Defendants and their insurers, at that first mediation, that while they were prepared to fairly assess the strengths and weaknesses of Lead Plaintiffs' case, they would continue to litigate rather than settle for less than fair value. Following the first mediation, the parties and insurance counsel continued to engage in arduous and extensive settlement negotiations, including a second mediation session before Judge Politan, before they reached an agreement-in-principal to settle on or about March 13, 2009.

Had it not settled, the Litigation would continue to pose significant risks for the Class, with ultimate success far from certain. The parties were diametrically opposed on the theory of liability underlying the case. Falsity was hotly contested, and may have proved difficult to establish at trial. Specifically, Defendants argued that Heelys' Prospectus adequately disclosed all of the information Lead Plaintiffs claimed was omitted, including: (i) the safety risks associated with using Heelys' wheeled-shoes and its effect on consumer demand for the Company's products; (ii) the extent and effect of counterfeit or knock-off products on Heelys' sales; and (iii) Heelys' ability to monitor consumer demand. Joint Decl., ¶¶33-34; Appx. at 21-22.

Defendants also maintained that any adverse conditions which arose with respect to the Company arose after the IPO, and were not known by Defendants at the time the Company issued the Prospectus. Defendants also asserted other defenses to liability, including that (i) the alleged misstatements and omissions were forward-looking statements protected by the PSLRA's safe harbor provisions; (ii) the Individual Defendants and Capital Southwest reasonably and in good faith relied on the work and conclusions of professionals and experts in executing and authorizing the execution and publication of the Prospectus; and (iii) Lead Plaintiffs would not be able to overcome Defendants' negative causation defense and, with respect to the Underwriter Defendants, their due diligence defense. Joint Decl., ¶34; Appx. at 21-22.

At trial, Lead Plaintiffs would also face the risk that a jury would react unfavorably to the evidence presented and find in favor of Defendants. Joint Decl., ¶¶35-36; Appx. at 22-23. And, even if Lead Plaintiffs were successful at trial and obtained a substantial judgment, Defendants would almost certainly appeal the judgment to the Fifth Circuit. Considering these risks and the significant, immediate all-cash recovery that Plaintiffs' Counsel have obtained for the Class, the percentage fee award requested is fair and reasonable.

In sum, in the face of the obstacles referred to above – in a case asserting claims predicated on complex legal and factual issues that were vigorously opposed by highly skilled and experienced defense counsel – Plaintiffs' Counsel succeeded in securing a very good recovery for the Class of $7.5 million. Plaintiffs' Counsel respectfully submit that the 30% fee requested is fair and reasonable when considered under applicable legal standards, is the proper method of compensating counsel, and is particularly appropriate here in view of the substantial risks attendant in pursuing the Litigation and the significant results achieved. Additionally, following the dissemination of 17,556 copies of the Notice, not a single objection to the fee request has been received.

## II. THE REQUESTED FEE SHOULD BE AWARDED BASED ON A PERCENTAGE OF THE RECOVERY OBTAINED

### A. Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Created

Courts have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 443 (S.D. Tex. 1999) (same). In addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future

misconduct of a similar nature. *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

**B.    Fees in Common Fund Cases Should Be Based on a Percentage of the Recovery**

As shown below, the United States Supreme Court, numerous courts of appeal, and the overwhelming weight of authority from districts within the Fifth Circuit, all support the view that fees in common fund cases should be awarded based on a percentage of the recovery.

**1.    The Supreme Court Has Repeatedly Held that Fees in Common Fund Cases Are Properly Calculated Based on a Percentage of the Recovery**

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at 166-67; *Boeing*, 444 U.S. at 478-79. Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to make it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").[7]

---

[7]    *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (hereinafter the "*Task Force Report*") (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same).

Despite Supreme Court precedent approving percentage fees in common fund cases, many

years ago some district courts began employing an alternative method for calculating fee awards

known as the "lodestar/multiplier" method.[8] But the Supreme Court has **never** adopted the lodestar

method in a common fund case. *See Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 963 (E.D.

Tex. 2000) (citing *Manual for Complex Litigation* §24.12, at 189 (3d ed. 1995)).

In the wake of the Supreme Court's decisions in *Boeing*, 444 U.S. 472, and *Blum*, 465 U.S.

886, which reaffirmed the appropriateness of the percentage method in common fund cases, Chief

Judge Aldisert of the Third Circuit (the author of *Lindy II*) convened a task force of prominent

judges and practitioners to reconsider *Lindy II* because "a number of difficulties [had] been

encountered in applying the [lodestar method]." *Task Force Report*, 108 F.R.D. at 238. The task

force, headed by Professor Arthur R. Miller, formerly of Harvard Law School, identified at least nine

perceived deficiencies of the *Lindy II* "lodestar" approach, and found that there was a "widespread

belief" that these deficiencies "either offset or exceed [the] benefits" of the lodestar method. *Task

Force Report*, 108 F.R.D. at 246.[9] Accordingly, the Third Circuit Task Force concluded that

---

[8]      The lodestar approach entails two steps. First, to determine the lodestar, the court multiplies
the number of hours reasonably spent on the case by each attorney's reasonable hourly rate. Second,
the court adjusts that figure (by applying a multiplier) to reflect such factors as the risks faced and
overcome, the contingent nature of the litigation, the result obtained, and the quality of the attorneys'
work. *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d
161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator
& Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (en banc) ("*Lindy II*").

[9]      The nine deficiencies with the lodestar method that the *Task Force Report* identified were as
follows: 1) the lodestar method "increases the workload of an already overtaxed judicial system"; 2)
the lodestar elements "are insufficiently objective and produce results that are far from
homogenous"; 3) the lodestar method "creates a sense of mathematical precision that is unwarranted
in terms of the realities of the practice of law"; 4) the lodestar method "is subject to manipulation by
judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts
recovered by the plaintiffs or of an overall dollar amount"; 5) although crafted to prevent abuses, the
lodestar method has simply led to other abuses, like "encourag[ing] lawyers to expend excessive
hours . . . engag[ing] in duplicative and unjustified work, inflat[ing] their 'normal' billing rate, and

although *Lindy II* continued to have merit in **statutory fee-shifting cases**, and should be followed in such cases, fee awards in **common fund cases** should be based on a percentage of recovery. *Task Force Report*, 108 F.R.D. at 254-59.

### 2. A Majority of Courts of Appeal Have Approved the Percentage-of-the-Recovery Method

Since the issuance of the *Task Force Report* in 1985, virtually every circuit court has joined the United States Supreme Court in approving use of the percentage-of-the-fund method in common fund cases.[10] As these and many other courts have noted, the percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation (which is what happened here), thereby benefiting both litigants and the judicial system. Conversely, numerous courts have criticized the lodestar method for encouraging plaintiffs' attorneys to needlessly drag out complex litigations for years in order to run up "lodestar" hours, even when their clients' and the class's interests would be much better served

includ[ing] fictitious hours"; 6) the lodestar method "creates a disincentive for the early settlement of cases"; 7) the lodestar method "does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered"; 8) the "lodestar" is set lower in civil rights cases than in securities and antitrust cases and, consequently, "works to the particular disadvantage of the public interest bar"; and 9) despite the superficial appearance of simplicity in the lodestar approach (hours x fees + enhancements), "considerable confusion and lack of predictability remain in its administration." *Task Force Report*, 108 F.R.D. at 246-49 (emphasis omitted).

[10]    *See, e.g.*, *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of discretion); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("After reviewing *Blum*, the [Third Circuit] Task Force Report, and . . . cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (percentage of the fund recovered is the **only** permissible measure of awarding fees in common fund cases).

by an earlier, more efficient, settlement of a case based on arm's-length negotiations conducted by experienced counsel.

The percentage approach is also the most efficient means of rewarding the work of class action attorneys, since it avoids the wasteful and burdensome process of counsel preparing, and courts evaluating, lodestar-based fee petitions, which the Third Circuit Task Force has described as "cumbersome, enervating, and often surrealistic." *Task Force Report*, 108 F.R.D. at 258.[11]

One of the nation's foremost scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has also concluded that – among its many other benefits – the percentage method is also far superior to the lodestar method in aligning the interests of class counsel with the interests of absent class members. Indeed, as Professor Silver has written:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.*** It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> ***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.*** The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

---

[11]    *See also Shaw*, 91 F. Supp. 2d at 964 ("The lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed.").

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) (emphasis added; footnotes omitted).[12]

Finally, the percentage method of calculating fees is particularly appropriate in the PSLRA context. The PSLRA explicitly authorizes the percentage method in calculating fees in securities actions. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

Thus, the Court should award Plaintiffs' Counsel a reasonable percentage of the Settlement Fund. Under the circumstances present here, 30% is a reasonable percentage.

### 3. Numerous District Courts in This Circuit Have Used the Percentage-of-the-Recovery Method to Determine Reasonable Attorneys' Fees

Anticipating the trend away from the lodestar method, Judge Vance of the Fifth Circuit stated in his separate opinion in *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 337 n.1 (5th Cir. 1978):

> [I]f mechanically applied, the hourly rate approach almost inevitably leads to an unsatisfactory result in this type of litigation. This method of compensation – which equates professional services to those of laborers and mechanics – frequently has little or no relationship to the value of the services performed in anything but the

---

[12]    Similarly, one of the country's leading securities law scholars has argued that a percentage of the gross recovery is the only reasonable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing. The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory" approach is the only alternative . . . .

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (May 1986).

most routine work. A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort. Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation.

Notwithstanding Judge Vance's insight and the manifest advantages of the percentage fee method over the lodestar method, the Fifth Circuit has not yet explicitly determined which method should apply in common fund cases.

However, in *Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992), the Fifth Circuit affirmed the district court's percentage fee award in a securities class action, and noted in passing that the district court had stated its preference for the percentage-of-recovery method "as a matter of policy" in common fund cases. *Id*. at 1100 n.11. And although the Fifth Circuit confirmed that the lodestar method and application of the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ("*Johnson*"), remains appropriate in some cases, it was careful to expressly reserve the question of whether the percentage method applies in the common fund context. *Strong v. BellSouth Telecomms.*, 137 F.3d 844, 852 (5th Cir. 1998) (holding that the Supreme Court's decision in *Boeing*, which applied the percentage-of-the-fund method, was distinguishable because the settlement at issue in *Strong* – unlike *Boeing* – did **not** involve a traditional common fund). Indeed, at least one lower court has read *Strong* as foreshadowing the Fifth Circuit's formal joinder in the Supreme Court-led trend towards use of the percentage method in common fund cases:

> Clearly . . . the Fifth Circuit recognizes the propriety of the percentage fee method where each member of a class has an "undisputed and mathematically ascertainable claim to part of [a] lump-sum judgment." *See* [*Strong*] at 852 (quoting *Boeing*, 444 U.S. at 479, 100 S. Ct. at 748).

*In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, at *9 (E.D. La. Nov. 25, 1998) (awarding percentage fee); *see also Shaw*, 91 F. Supp. 2d at 967 ("In *Strong*, the Fifth Circuit highlighted the difference between the common-fund class action and other class actions.").

As other district courts within this Circuit have noted, "since *Blum* was decided [in 1984], there has been no Fifth Circuit decision that would preclude this Court from employing the percentage of the fund approach endorsed in *Blum* and the circuit and district court decisions that followed and applied *Blum*." *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL No. 888, 1994 U.S. Dist. LEXIS 4786, at *11-*12 (E.D. La. Apr. 13, 1994) (*"Prudential I"*); *see also Shaw*, 91 F. Supp. 2d at 967 n. 15 ("the Fifth Circuit has **never** . . . reversed a district court judge's decision to award a fee as a percentage") (emphasis in original); *Longden*, 979 F.2d at 1100 n.11 (affirming district court's percentage fee award in securities class action). Accordingly, numerous district courts within the Fifth Circuit have applied the percentage-of-recovery method in awarding fees. For example, the published opinions in *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996), and *Shaw*, 91 F. Supp. 2d at 966-67, list numerous class action cases as examples. Indeed, as this Court has noted in *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *84 (N.D. Tex. Nov. 8, 2005), "there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." In addition, as discussed below, there are numerous additional district courts in this Circuit that have used the percentage method that are not cited in *Catfish* or *Shaw*. These decisions are in accord with the trend in other district courts in favor of the percentage-of-recovery approach.

### C.   The Requested Percentage Is Fair and Reasonable and Is Consistent with Fee Awards in Comparable Cases From This District

The requested fee award of 30% of the Settlement Fund is consistent with awards made in similar cases. *See, e.g.*, *Shaw*, 91 F. Supp. 2d at 972 ("based on the opinions of other courts and the available studies of class action attorneys' fees awards (such as the NERA study), this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33-1/3%] have been routinely awarded in class actions"). The NERA study referenced in *Shaw* was performed by National Economic Research Associates, an economics consulting firm that analyzed class action fee

awards using data from 433 shareholder class actions.  The study reports that "[r]egardless of case size, fees average approximately 32 percent of the settlement."  Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996).  Twenty-six of the 433 settlements that NERA examined were in the Fifth Circuit.  *Id.* at Table 12b.  And the average attorney fee as a percentage of the settlement in this Circuit was 30.73%.  *Id.*  In fact, district courts in this Circuit, including this one, have repeatedly awarded fees of 30% or more of the total recovery under the percentage-of-the-recovery method in securities class actions.  *See Crowell v. Mannatech, Inc.*, Civil Action No. 3:07-cv-00238-K, slip op. (N.D. Tex. Mar. 10, 2009) (Compendium at 12)[13]; *Brody v. Zix Corp., et al.*, No. 3-04-CV-1931-K, slip op. (N.D. Tex. June 16, 2008) (awarding 33-1/3% of settlement fund) (Kinkeade, J.) (Compendium at 3).  Again, as this Court noted in *TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *101, "the customary fee awarded in securities cases in this District and across the country is 30% or more."[14]

---

[13]     A copy of this decision as well as other unreported or unofficially reported decisions cited herein are contained in the Compendium of Unreported Authorities Cited in Support of Unopposed Motion for an Award of Attorneys' Fees and Expenses ("Compendium"), submitted herewith.

[14]     *See also In re El Paso Elec. Co. Sec. Litig.*, No. EP-03-CA-0004-DB, slip op. (W.D. Tex. Sept. 15, 2005) (awarding 30% of settlement fund) (Briones, J.); *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, No. 4:00-CV-355y, slip op. (N.D. Tex. Mar. 9, 2005) (awarding 30% of settlement fund) (Means, J.); *In re Landry's Seafood Restaurants, Inc. Sec. Litig.*, No. H-99-1948, slip op. (S.D. Tex. June 13, 2002) (Harmon, J.) (approving fee of 30% of $6 million settlement in securities class action); *In re Unistar Fin. Serv. Corp. Sec. Litig.*, No. 3:99-CV-1857-M, slip op. (N.D. Tex. Aug. 17, 2001) (Lynn, J.) (approving fee of 30% in a securities class action); *In re Intellicall Sec. Litig.*, No. 3:91-CV-0730-P, slip op. (N.D. Tex. Sept. 22, 1993) (Solis, J.) (approving fee of 30% of settlement in a securities class action); *In re ProNet, Inc. 1933 Act Sec. Litig.*, No. 3:96-CV-1795-P, slip op. (N.D. Tex. Nov. 19, 1997) (Solis, J.) (awarding 30% fee); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, slip op. (S.D. Tex. Dec. 19, 2001) (Rosenthal, J.) (30% award of a $24.1 million fund) (*see* Compendium at 17, 47, 37, 44, 29, 41, 15).

### D.    The Requested Fee Is Consistent with Contingent Fee Arrangements Negotiated in Non-Class Litigation

The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).   In non-class litigation, 33-1/3% contingency fees are typical.  As Justices Brennan and Marshall observed in their concurring opinion in *Blum*: "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery." *Blum*, 465 U.S. at 903*.  *See also In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ("*Prudential II*") ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

## III.    THE REASONABLENESS OF THE PERCENTAGE FEE REQUESTED IS CONFIRMED BY AN ANALYSIS OF THE *JOHNSON* FACTORS

As noted above, the percentage-of-recovery method is generally favored in common fund cases.  While Plaintiffs' Counsel submit that it is the appropriate method to determine their fees in this case, application of the *Johnson* factors also confirms that the requested fee is fair and reasonable.  Some district courts within the Fifth Circuit have applied a hybrid approach in analyzing the fairness and reasonableness of requested fees, using the percentage method to set an initial percentage fee, and then adjusting that fee up or down based on the previously noted *Johnson* factors.  *See Harrah's*, 1998 U.S. Dist. LEXIS 18774, at *20-*21; *see also Shaw*, 91 F. Supp. 2d at 967-68.  An analysis of the *Johnson* factors demonstrates that an award of 30% of the Settlement Fund is reasonable in this case.  The *Johnson* factors are as follows: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4)

preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).[15]

### A.    Time and Labor Required

Plaintiffs' Counsel committed considerable resources and time researching, investigating, and prosecuting this Litigation. In considering the time and labor expended, several factors should be considered. First, Plaintiffs' Counsel conducted a diligent investigation to build a framework for a successful securities fraud case. Second, the legal obstacles to recovery were significant, and a recovery was obtained only because of the skill and tenacity of Plaintiffs' Counsel. Third, as the history of the Litigation makes clear, the services provided by Plaintiffs' Counsel were both efficient and successful, resulting in a very good recovery for the Class at a relatively early stage of the litigation without the substantial expense, risk, and delay of continued litigation. In these circumstances, the requested fee is warranted. Indeed, "[t]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services." *Harrah's*, 1998 U.S. Dist. LEXIS 18774, at *15. *See also TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *95 ("efficiency and effectiveness should be

---

[15]    The following factors do not pertain to this case: time limitations imposed by the client, and the nature and length of the professional relationship with the client. Thus, Plaintiffs' Counsel will not analyze these factors.

rewarded"); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *32 (undue emphasis on the number of hours would penalize counsel for obtaining early settlement). *See also Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1019 n.5 (3d Cir. 1977) ("'One thousand plodding hours may be far less productive than one imaginative, brilliant hour.'") (citation omitted); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (resolving cases without undue cost or delay is consistent with the purposes of the Federal Rules of Civil Procedure).

In any event, an analysis of Plaintiffs' Counsel's lodestar confirms the reasonableness of the requested fee. Plaintiffs' Counsel and their para-professionals have expended 8,493 hours in the investigation, prosecution, and settlement of this Litigation with a resulting lodestar of $3,422,961.75. The information with respect to the total lodestar is contained in the accompanying submissions by Plaintiffs' Counsel's individual firms. Appx. at Exhibits 2-4. On a lodestar basis, the requested fee represents a negative multiple of approximately 0.65 of the lodestar. Stated another way, a 30% fee represents only 65% of Plaintiffs' Counsel's lodestar.

### B.    Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Plaintiffs' Counsel's request for attorneys' fees. From the outset, this post-PSLRA action involved novel and difficult issues that required the skill and experience of Plaintiffs' Counsel. There was no assurance whatever that the Litigation would survive Defendants' attacks on the pleadings, motions for summary judgment, trial, and appeals. Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166,

194 (E.D. Pa. 2000).[16]    Fifth Circuit decisions on causation, pleading, and proof at the class

certification stage make PSLRA claims particularly difficult in this Circuit.  *See In re Enron Corp.*

*Sec. Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 788 (S.D. Tex. 2008).  Plaintiffs' Counsel

recognized this risk when undertaking representation.  In addition to the usual difficulties in proving

securities fraud cases (*see, e.g.*, the discussion of the eighth *Johnson* factor below), this Litigation

involved particularly complex issues of law and fact, including the actionability of Defendants'

statements in the Prospectus and damages.

Notwithstanding that the Complaint survived Defendants' motions to dismiss, very difficult

issues of proof remained as to key elements of a claim for violation of the Securities Act of 1933.

To establish that Defendants' statements were in fact materially false or misleading at the time they

were made, and that those statements caused the Class's damages, Lead Plaintiffs would have had to

conduct extensive additional discovery focused on difficult, subjective questions relating to the

adequacy and accuracy of Heelys' statements to the investing public.  There was no assurance that

further discovery would support Lead Plaintiffs' claims.  Moreover, the jury might find favor with

Defendants' arguments that they acted reasonably under the circumstances.

Even assuming Lead Plaintiffs were able to prove liability, they still would have

unquestionably confronted expert testimony by Defendants that any losses the Class suffered were

not caused by any alleged misleading statements – and that Lead Plaintiffs' models for calculating

damages (even if liability were established) are invalid in the wake of recent Supreme Court cases

---

[16]    Even before the passage of the PSLRA, courts had noted that a securities case "by its very
nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D.
Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  *See also Miller v. Woodmoor
Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-*12 (D. Colo. Sept. 28, 1978) ("The
benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty
of the case. . . .  Despite years of litigation, the area of securities law has gained little predictability.
There are few 'routine' or 'simple' securities actions.").

such as *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) – which would severely reduce or eliminate the amount of recoverable damages.[17]  To the extent that Defendants could prevail on issues relating to liability or show that any assumptions made by Lead Plaintiffs' experts were incorrect or unreliable or could show that any portion of the market drop was due to factors other than the alleged misstatements or omissions in the Prospectus, Lead Plaintiffs' claimed damages could decline by millions of dollars.  Moreover, the reaction by a jury to such complex testimony is highly unpredictable and a jury could have very well sided with Defendants' experts.[18]  *See* Joint Decl., ¶¶35-36; Appx. at 22-23.  Thus, there was a real risk that even if Lead Plaintiffs were successful in proving liability, a jury could have awarded damages in an amount less than the proposed settlement or none at all.

### C.    The Amount Involved and Results Obtained

The benefit conferred to the class and the result achieved is an important factor in setting a fair fee.  *See, e.g.*, *In re Terra-Drill P'ships Sec. Litig.*, 733 F. Supp. 1127, 1128 (S.D. Tex. 1990) (noting that the *Johnson* factors emphasize "the results obtained").  The settlement constitutes a fair, reasonable, and adequate recovery under any circumstances, which may not ultimately be matched, at the conclusion of lengthy and costly litigation several years down the road.  When this recovery is viewed against the difficulties Lead Plaintiffs would face proving liability and damages, and

---

[17]    *See also Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *5-*6 (N.D. Ill. Sept. 19, 2000) (granting defendants' motion in limine to strike testimony of plaintiffs' damages expert) (citing *Daubert*, 509 U.S. 579).

[18]    This observation has been made by many courts in jurisdictions all over the country.  *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (noting unpredictability of outcome of battle of damage experts), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts,' . . . with no guarantee whom the jury would believe"); *United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972) (jury under no obligation to accept as completely true testimony of any expert witness).

carrying their burdens at summary judgment and trial, this Court should find that it would have been very difficult for Lead Plaintiffs to obtain a greater recovery. *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly."), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). In fact, the settlement obtained represents a recovery of approximately 9% of the Class's alleged maximum recoverable damages. *See* Joint Decl., ¶¶30, 56; Appx. at 19-20, 31-32.[19]

### D.    Skill Required: the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys also support the requested fee award. As this Court has previously noted, the skill required factor "is evidenced where '[c]ounsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution.'" *TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *98-*99 (quoting *Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *36). *See also In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *39-*40 (C.D. Cal. June 10, 2005) ("'The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)).

Here, Plaintiffs' Counsel performed their work diligently and skillfully and achieved a substantial recovery for the Class at a relatively early stage of the litigation, thus avoiding the

---

[19]    Based on an estimate of 7.38 million shares issued in the Company's IPO, the alleged statutory measure of damages would be $85 million (7.38 million x ($21.00 (the price per share of Heelys common stock in its IPO) - $9.49 (the price per share of Heelys common stock on the date this Litigation was commenced, August 27, 2007))). *See* Joint Decl., ¶30, n. 19; Appx. at 19-20.

expense, delay, and uncertainty of continued litigation. Plaintiffs' Counsel have many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions, and have achieved significant acclaim for their work, as set forth in the exhibits to the accompanying fee and expense submissions. Appx. at Exhibits 2-4.

Plaintiffs' Counsel's experience in the field also allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to formal discovery, identify the complex issues involved in this case, and formulate strategies to successfully prosecute it effectively. *See TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *99 ("Plaintiffs' Counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case."). But for Plaintiffs' Counsel's efforts, the Class's claims might have been dismissed at the pleading stage. Instead, Plaintiffs' Counsel were able to secure a settlement of $7.5 million, representing a very good result for the Class.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Plaintiffs' Counsel. *See, e.g.*, *In re Aetna Inc. Sec. Litig.*, No. 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001); *Ikon*, 194 F.R.D. at 195. The defense attorneys in this case are aggressive, experienced, and highly skilled. Vinson & Elkins LLP and Fulbright & Jaworski L.L.P., two of the finest defense firms in the country, represent Defendants. *See TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *100 (finding that skill factor supported the fee award because, *inter alia*, opposing counsel were "highly experienced lawyers from prominent and well-respected law firms"). The ability of Plaintiffs' Counsel to develop their case and negotiate this excellent settlement in the face of this formidable opposition confirms the quality of Lead Plaintiffs' representation.

### E.    Preclusion of Other Employment

The time spent by Plaintiffs' Counsel on this case was at the expense of time that counsel could have devoted to other matters. Accordingly, to the extent applicable, this factor supports the requested percentage.

### F.    Whether the Fee Is Fixed or Contingent

Plaintiffs' Counsel undertook this Litigation on a contingent fee basis, assuming a substantial risk that the Litigation would yield no recovery and leave them uncompensated. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential II*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*Prudential II*, 1994 U.S. Dist. LEXIS 6621, at *16.[20]

Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. Subsequent to the passage of the PSLRA, many cases in this Circuit have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's pleading standards. Plaintiffs' Counsel were faced with this very real possibility in this action. *See* Joint Decl., ¶¶59-61; Appx. at

---

[20]    *See TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *102-*103 (recognizing "the risk of no recovery in complex cases of this type is very real" and that "[c]ourts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees") (citation omitted).

33-34.  Even plaintiffs who get past summary judgment and succeed at trial may find their judgment

overturned on appeal or on judgment notwithstanding the verdict.[21]

Plaintiffs' Counsel have received no compensation during the course of this Litigation and

have incurred significant expenses in prosecuting this Litigation for the benefit of the Class.  Any fee

award or expense reimbursement has always been at risk and completely contingent on the result

achieved.  Thus, the contingent nature of the Litigation supports the requested percentage.

### G.    The Undesirability of the Case

The tenth *Johnson* factor, undesirability of the case, also supports the fee requested here.

Securities cases have generally been recognized as "undesirable" due to the financial burden on

counsel and the time demands of litigating class actions of this size and complexity.  *Garza v.

Sporting Goods Props., Inc.*, No. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996)

(factors such as financial burden on counsel and time demands of litigating class action of this size

and complexity have caused cases to be considered "undesirable").  This was never an easy case and

the risk of no recovery was always high.  When counsel undertook representation of Lead Plaintiffs

and the Class in this Litigation, it was with the knowledge that they would have to spend substantial

time and money and face significant risks without any assurance of being compensated for their

efforts.  The risks Plaintiffs' Counsel faced must be assessed as they existed at the time counsel

undertook the Litigation and not in light of the settlement ultimately achieved.  *See, e.g., Harman v.*

---

[21]    *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion). *See also In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486-CW, Verdict Questions Form (N.D. Cal. Nov. 27, 2007) (jury verdict for class overturned); *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (defense verdict).

*Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (the riskiness of a case must be judged *ex ante* not *ex post*).  Thus, the "undesirability" of the Litigation supports the requested percentage.

## H.    The Customary Fee and Awards in Similar Cases

As demonstrated above, a 30% fee is consistent with fee percentages that have been repeatedly awarded by courts in this Circuit and District as well as numerous other similar cases throughout the country.  *See* Appendix A hereto.

## IV.    CLASS MEMBER REACTION

Although not formally noted in the case law for this jurisdiction as a factor for the Court's consideration in determining an award of attorneys' fees, courts throughout the country have found that the absence of any objections from the class to the attorneys' fees requested supports the reasonableness of the requested attorneys' fees.[22]  Here, to date, there have been no objections to Plaintiffs' Counsel's fee request.[23]  The lack of objections by Class Members is important evidence that the requested fee is fair.  *See, e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request).

---

[22]    *See, e.g.*, *In re Rite Aid Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 WL 906361, at *10 (E.D. Pa. Apr. 18, 2005) (absence of objections supports award of requested fee); *In re Charter Commc'ns, Inc., Sec. Litig.*, MDL No. 1506, 2005 WL 4045741, at *19 (E.D. Mo. June 30, 2005) (small number of objections from institutional investors supported approval of fee request); *Maley*, 186 F. Supp. 2d at 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court.").

[23]    As set forth in the Notice, the time for objections expired on October 15, 2009.

**V.    PLAINTIFFS' COUNSEL ARE ENTITLED TO BE PAID FOR THEIR REASONABLE LITIGATION EXPENSES AND INTEREST**

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement from the fund of reasonable litigation expenses and costs. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL 1446, 2004 WL 1900294, at *3 (S.D. Tex. Aug. 5, 2004) (awarding reimbursement of approximately $4.8 million of expenses). *See also Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *37 (awarding full $187,667.57 amount of expenses in addition to 30% attorneys' fee, noting that "[n]o party has objected to the amount of the expenses" and that such expenses were reasonable); *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 U.S. Dist. LEXIS 6793, at *36 (E.D. La. May 16, 2001) (awarding costs in addition to the percentage fee); *Harrah's*, 1998 U.S. Dist. LEXIS 18774, at *9 (same). Plaintiffs' Counsel are seeking payment of their reasonable costs and expenses in an aggregate amount of $223,971.42 for prosecuting this Litigation on behalf of the Class. As itemized in the fee and expense submissions of counsel (Appx. at Exhibits 2-4), these expenses were necessary for the investigation and prosecution of the case. The expenses incurred by Plaintiffs' Counsel include in-house and private investigators, in-house damage consultants, expert fees, mediation fees, travel, photocopying of documents, on-line research, messenger service, postage, express mail and next day delivery, long distance and facsimile expenses, and other incidental expenses directly related to the prosecution of this Litigation. Accordingly, Plaintiffs' Counsel respectfully submit that all of these expenses were reasonable and necessarily incurred in the prosecution of the Litigation and therefore should be paid from the Settlement Fund. *Id.*

Moreover, "awards of attorneys' fees commonly include both the principal amount and the accrual of legal interest." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 873 (E.D. La. 2007). *See also* 15 U.S.C. §78u-4(a)(6). Accordingly, Plaintiffs' Counsel respectfully submit that it is appropriate to award interest here.

## VI.    CONCLUSION

For the foregoing reasons and upon the entire record, Plaintiffs' Counsel respectfully request that the Court award attorneys' fees in the amount of 30% of the Settlement Fund and expenses in the amount of $223,971.42, plus accrued interest at the same rate as earned by the Settlement Fund.

DATED:  October 27, 2009                    Respectfully submitted,

KENDALL LAW GROUP, LLP
JOE KENDALL
State Bar No. 11260700
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

Liaison Counsel

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DENNIS J. HERMAN
SHIRLEY H. HUANG
BING Z. RYAN
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ELLEN GUSIKOFF STEWART

                       s/ Ellen Gusikoff Stewart
                  ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

BARROWAY TOPAZ KESSLER
  MELTZER & CHECK, LLP
ANDREW L. ZIVITZ
KAREN E. REILLY
MARK DANEK
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

Co-Lead Counsel for Plaintiffs

Document1

CERTIFICATE OF CONFERENCE

On Tuesday, October 27, 2009, I received e-mail messages from Kenneth P. Held of Vinson & Elkins LLP, on behalf of the Heelys Defendants, and Ellen Sessions of Fulbright & Jaworski L.L.P., on behalf of the Underwriter Defendants, informing me that Defendants do not oppose this motion.

*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 27, 2009.

                            s/ Ellen Gusikoff Stewart
                            ELLEN GUSIKOFF STEWART

                            COUGHLIN STOIA GELLER
                                  RUDMAN & ROBBINS LLP
                            655 West Broadway, Suite 1900
                            San Diego, CA  92101-3301
                            Telephone:  619/231-1058
                            619/231-7423 (fax)
                            E-mail: EllenG@csgrr.com

# Mailing Information for a Case 3:07-cv-01468-K

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rodney Acker**
  racker@fulbright.com

- **Stuart L Berman**
  sberman@btkmc.com

- **Mary K Blasy**
  mblasy@scott-scott.com,efile@scott-scott.com

- **Elizabeth C Brandon**
  egreen@velaw.com,korourke@velaw.com

- **Roger F Claxton**
  roger@claxtonlaw.com

- **Mark S Danek**
  mdanek@btkmc.com,dpotts@btkmc.com

- **Lionel Z Glancy**
  lglancy@glancylaw.com,info@glancylaw.com

- **Roger B Greenberg**
  rgreenberg@schwartz-junell.com,sdoring@schwartz-junell.com

- **Kenneth P Held**
  kheld@velaw.com,kmcspadden@velaw.com

- **Dennis J Herman**
  dennish@csgrr.com,jdecena@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Robert J Hill**
  rhill@hillandhill-law.com

- **Karen L Hirschman**
  khirschman@velaw.com,randerson@velaw.com

- **Shirley H Huang**
  shirleyh@csgrr.com,jdecena@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Daniel Jude Kelly**
  dkelly@velaw.com,vgreen@velaw.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com

- **Hamilton Lindley**
  hlindley@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Gerard G Pecht**
  gpecht@fulbright.com,amorgan@fulbright.com,pstokes@fulbright.com

- **Karen E Reilly**
  kreilly@btkmc.com

- **Bing Z Ryan**
  bryan@csgrr.com

- **Ellen B Sessions**
  esessions@fulbright.com

- **Evan J Smith**
  esmith@brodsky-smith.com,mackerman@brodsky-smith.com

- **Michelle S Spak**
  mspak@velaw.com,sadavis@velaw.com

- **Ellen Gusikoff Stewart**
  elleng@csgrr.com,jstark@csgrr.com

- **Allen W Yee**
  ayee@velaw.com,smorton@mortonpllc.com,nwest@velaw.com

- **Andrew L Zivitz**
  azivitz@btkmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Nicholas H Politan
Nicholas H Politan LLC
5 Becker Farm Rd
Roseland, NJ 07068
```